**RICHARD WILSON, Plaintiff**

**v.**

**ANTOINE JOSEPH, Defendant & Third-Party Plaintiff**

**v.**

**AVEAH FARREL, Third-Party Defendant**

Civil No. 1047/1991

Territorial Court of the Virgin Islands

Div. of St. Croix

November 23, 1992

BEVERLY A. EDNEY, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

ROSS AND CANNON, ESQS. (GEORGE W. CANNON, JR., of Counsel), St. Croix, V.I., *for defendant/third-party plaintiff*

AVEAH FARREL, St. Croix, V.I., *pro se*

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff, a month-to-month tenant of Defendant Landlord, sued Landlord for damages suffered by him when rented premises used as his residence flooded as a proximate result of incorrect connection of hose to septic tank by deceased Third-Party, the widower of the impleaded Third-Party Defendant. The Court dismissed the action against the Third-Party, holding that the proper Third-Party is the Estate of the decedent against whose estate claim for damages should be filed to test validity of claim. Since we find that Plaintiff's claim cannot legally lie against Defendant on the basis of either the doctrine of respondeat superior or negligent entrustment, and the damages suffered were the proximate result of the conduct of decedent who was an independent contractor supplying services not to common areas in the premises of landlord under landlord's control, we dismiss the action.

### II. FACTS

Prior to the incident out of which this action arose, Plaintiff had been a month-to-month tenant of Defendant renting quarters at No. 174 Two Brothers, Frederiksted, St. Croix, for approximately two years at $200.00 a month. On many occasions, whenever there was a depletion of potable cistern water at the apartment, Defendant employed the husband of the Third-Party Defendant, now deceased, (hereafter "decedent"), who operated a water trucking supply business, to replenish the supply. There is no evidence that decedent was ever less than careful, prudent and businesslike in either his services to Defendant or to other clients either in performing this service or in any other activity.

On or about June 20, 1990, the Defendant employed the decedent to replenish the water supply at Plaintiff's residence. When Plaintiff arrived home, he found his residence in an unsanitary condi-

tion caused by the decedent or his employee(s) connecting the water hose to the septic tank instead of the cistern, which created a dirty, malodorous and unbearable condition so that the home was unfit for human habitation. Plaintiff moved out of the home immediately, and informed Defendant of the problem. Defendant promptly did the best he could to employ, and did employ, a suitable service to remedy the problem. The cleaning service was accomplished in approximately one month.

Plaintiff had paid Defendant the rent due for the month of June in advance and was unable to enjoy the use of the apartment for the last third of the month of June, 1990. He also suffered the loss of furniture, furnishings and personal effects, including wearing apparel, all of which he valued at $3,500.00 according to letter dated 19 July 1990, written on his behalf to Defendant by Attorney Michael A. Joseph, seeking payment of this amount by Defendant in settlement of the matter. At trial on the merits, Plaintiff also sought damages he alleged he suffered because of embarrassment experienced mainly as a result of his students seeing him sleeping in his car from time to time for about three months after the incident due to his inability to secure other premises he could afford.[1]

Since no settlement of his claim was achieved, Plaintiff commenced suit against Defendant in the Small Claims Division of the Court (Case No. S.C. 438/1991) on May 9, 1991, later transferred by Order of the Court to the Civil Division of the Court (Civil No. 1047/1991) for recovery in the amount of $3,673.00.

On November 20, 1991, Defendant filed a Third-Party Complaint against Aveah Farrel, widow of the decedent, seeking (a) Judgment "within the jurisdictional limits of this Court, sufficient to compensate the Defendant/Third-Party Plaintiff for injuries described in this Third-Party Complaint, together with prejudgment interest and attorney's fees incurred; [and] (b) . . . for contribution in the amount of all damages, costs, and attorney's fees which may be awarded to the Plaintiff as a result of the injuries and damages he alleges in his Complaint".

On October 29, 1992, at a brief pretrial held immediately prior to trial on the merits, the Court dismissed the Third-Party Complaint against the widow of the decedent, holding there was no legal basis

---

[1] Plaintiff was a teacher of mathematics in the public school in St. Croix at the time of the incident.

to sustain a Third-Party claim against her since all dealings of Defendant in the transaction were with her deceased husband, who operated the business as a sole proprietorship, in which she claimed no proprietary interest.

## III. DISCUSSION

From the stated facts of this case, it is clear to the Court that the decedent did not render the water hauling service to the Defendant as his employee or servant. Therefore, the Defendant cannot be held liable to account for damages suffered by Plaintiff as a result of the failure of decedent or his employee(s) to exercise due care in rendering the service. Plaintiff contends landlord was under duty to repair the apartment, citing as his authority Restatement of Property, Second, Subsection 5.5.[2] Subsection 5.5(1) id. imposes no obligation on a landlord to keep premises rented for residential purposes in repair (if indeed replenishing the supply of water can properly be characterized as keeping the premises in repair), i.e., in a condition that meets the requirements of governing health, safety, and housing codes where, as here, the failure to meet those requirements is due to the conduct of third persons. We quote Subsection 5.5 (1):

"Obligation of Landlord to Keep Leased Property in Repair:
(1) Except to the extent the parties to a lease validly agree otherwise, the landlord, under a lease of property for residential use, is obligated to the tenant to keep the leased property in a condition that meets the requirements of governing health, safety, and housing codes, unless the failure to meet those requirements is the fault of the tenant or is the consequence of a sudden non-manmade force or the conduct of third persons". [Underscoring ours].

It cannot be disputed that the proximate cause of the injury to Plaintiff was the negligent conduct of decedent or persons for whose conduct he is responsible under the principle of respondeat superior. It would be manifestly unjust to hold landlord accountable for harm done to tenant by third persons for whose conduct he is not otherwise legally responsible, such as agents, employees, servants acting within the scope of their authority.

---

[2] The Restatements are the rule of law in this jurisdiction in the absence of local written or case law to the contrary. 1 V.I.C., Section 4.

■■ The landlord does have the obligation to keep safe and in repair the areas of the demised premises remaining under his control, so-called common areas such as hallways, stairways, elevators, etc., that are maintained for the use and benefit of his tenants. See Subsections 5.5 (2), 19.1 and 19.2 id. But the premises which were damaged here do not fall into this category. They are the areas exclusively in the possession and under the control of the tenant. Indeed, if the landlord had expressly or impliedly agreed to underwrite this type of loss, he would be obligated to do so. See Subsection 5.5 (3) id. But the record is devoid of any evidence to this effect.

Citing as his authority Subsections 19.1 and 19.2 id., Plaintiff also contends, on Page 1 of his Brief, "[t]hat the landlord is subject to liability not only for harm caused by the careless or unskillful workmanship which the independent contractor bestows upon repairs which he makes", but also for three months' rent he incurred due to landlord's failure to inform Plaintiff when the cleaning of the apartment was completed and for tenant's resulting failure to repossess the apartment. In both instances, Plaintiff's reliance is misplaced. As stated in Comment a, Subsections 19.1 and 19.2 id. must be read, interpreted, and applied in conjunction with Subsections 5.5 (1), (2), (3), and (4).[3]

Subsections 5.5 (1), (2), (3), (4), and (5) cannot reasonably be read so as to contradict Subsections 19.1 and 19.2 of the same work, Restatement of Property, Second. As we stated above, Subsections 19.1 and 19.2 clearly impose liability on the landlord for damages caused to tenant as a proximate result of careless performance of independent contractors employed by the landlord to repair common areas retained by and under the control of landlord for the benefit of his tenant(s). Clearly, landlord is also responsible in cases other than common areas where landlord expressly or impliedly contracted with tenant to be liable for such damages. Subsection 5.5 (3) id.

■■ The landlord can also be liable if he employed an independent contractor, and permitted him to use things or engage in activities which he knew, or should know, to be so incompetent,

---

[3] The institute takes no position on whether the rule of Subsection 5.5(1) id. should apply to commercial or industrial property. (Caveat to Subsection 5.5(1), but expresses its position with respect to residential property).

inappropriate, or defective that its use or such activities involved an unreasonable risk of harm to the Plaintiff. Restatement of Torts, Second, Section 307. It is also actionable negligence to permit a third person to . . . engage in an activity which is under the control of the actor if the actor knows, or should know, that such person intends, or is likely to use, the thing or to conduct himself in such manner as to create an unreasonable risk of harm to others. Section 308 id.

■ Sections 307 and 308 deal with what is commonly called the doctrine of negligent entrustment. The evidence in this case is to the effect that from the history of Defendant's dealing with the decedent and of decedent's reputation in the operation of his water hauling business in the small town of Frederiksted, the Defendant had no knowledge, nor did he have any reason to know or to believe that the decedent was other than a careful, prudent and reliable businessman. Therefore, the Court cannot find that the Defendant can be charged with negligent entrustment, making him liable for the negligent conduct of the independent contractor.

■ Since the evidence does not justify a finding that Defendant is liable on the ground of respondeat superior, negligent entrustment, or express or implied contract, is Plaintiff remediless? Based on the law of this jurisdiction, it is clear to the Court that Plaintiff's remedy, if any, lies in filing a claim for *all the damages* of which decedent's conduct is the proximate cause against the estate of decedent. 15 V.I.C., Chapter 23, Subchapter I. See 15 V.I.C., Section 236 for right of creditor to commence administration of estate of decedent, where necessary and advisable, to file and have satisfied his claim against the estate.

## JUDGMENT

Based on Memorandum Opinion dated on even date herewith, the Court being fully advised and satisfied in the premises, it is hereby

ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiff's Complaint is dismissed with prejudice; and
2. That each party shall bear his own costs.